No. 03-2671C
Judge Allegra

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

SIMONE ANDERSON,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT, WITH ATTACHED APPENDIX

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

ROBERT E. KIRSCHMAN
Assistant Director

STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St. NW
Washington, D.C. 20530
Tele: (202) 616-2377
Steven.Mager@usdoj.gov

August 8, 2005

Attorneys for Defendant

# TABLE OF CONTENTS

**PAGE**


STATEMENT OF THE ISSUES . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . 2

I. Nature of the Case . . . . . . . . . . 2

A. Named Parties . . . . . . . . . . 2

B. Cause of Action and Relief Requested . . . . . . . . . . 3

II. Statutory Authority and Personnel Manual . . . . . . . . . . 3

III. Statement of Facts . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . 7

I. Standards of Review . . . . . . . . . . 7

II. The Jurisdiction Of This Court Is Strictly Limited . . . . . . . . . . 8

III. The Employee Suggestion Award Statute And The DLA Manual Do Not Entitle Ms. Anderson To Any Money Damages. . . . . . . . . . . 10

IV. Ms. Anderson Cannot Demonstrate The Existence of An Implied-In-Fact Contract . . . . . . . . . . 12

A. Award Under DLA's Suggestion Program Remains Wholly Discretionary . . . . . . . . . . 12

B. Ms. Anderson Cannot Demonstrate That Her Suggestion Was Accepted And Implemented By An Authorized Government Official . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . 19

# TABLE OF AUTHORITIES

**CASES:** **PAGE(S)**

Adair v. United States,
227 Ct. Cl. 345, 648 F.2d 1318 (Ct. Cl. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Adams v. United States,
42 Fed. Cl. 463 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

American Pacific Roofing Co. v. United States,
21 Cl. Ct. 265 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Baltimore & Ohio R.R. v. United States,
261 U.S. 592 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Beauchamp v. United States,
6 Cl. Ct. 400 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

Bigler v. United States,
230 Ct. Cl. 985 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Bowen v. City of New York,
476 U.S. 467 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Bowen v. United States,
49 Fed. Cl. 673 (2001),
aff'd, 292 F.3d 1383 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Chavez v. United States,
18 Cl. Ct. 540 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Christianson v. Colt Industries Operating Corp.,
486 U.S. 800 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Chu v. United States,
773 F.2d 1226 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**CASES (CONTINUED):** **PAGE(S)**

City of El Centro v. United States,
922 F.2d 816 (Fed. Cir. 1990),
cert. denied, 501 U.S. 1230 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Collins v. United States,
67 F.3d 284 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Connolly v. United States,
1 Cl. Ct. 312 (1982),
aff'd in relevant part, 716 F.2d 882 (Fed. Cir. 1983),
cert. denied, 465 U.S. 1065 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Cosmo Const. Co. v. United States,
697 F.2d 1389 (Fed. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Delco Electronics Corp. v. United States,
12 Cl. Ct. 367 (1987),
aff'd, 909 F.2d 1495 (Fed. Cir. 1990) (Table) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Dynalectron Corp. v. United States,
4 Cl. Ct. 424,
aff'd, 758 F.2d 665 (Fed. Cir. 1984) (Table) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fidelity Construction Co. v. United States,
700 F.2d 1379 (Fed. Cir.),
cert. denied, 464 U.S. 826 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Grismac Corp. v. United States,
214 Ct. Cl. 39, 556 F.2d 494 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

Griffin v. United States,
215 Ct. Cl. 710 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Hamlet v. United States,
63 F.3d 1097 (Fed. Cir. 1985),
cert. denied, 517 U.S. 1155 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

Hayes v. United States,
20 Cl. Ct. 150 (1990),
aff'd, 928 F.2d 411 (Fed. Cir. 1991) (Table) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**CASES (CONTINUED):** **PAGE(S)**

Huston v. United States,
956 F.2d 259 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Kania v. United States,
650 F.2d 264 (Ct. Cl. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

Kempinski v. United States,
164 Ct. Cl. 451,
cert. denied, 377 U.S. 981 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

Kokkonen v. Guardian Life Ins. Co. of America,
511 U.S. 375 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Library of Congress v. Shaw,
478 U.S. 310 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

McCauley v. United States,
38 Fed. Cl. 250 (1997),
aff'd, 152 F.3d 948 (Fed. Cir.) (table),
cert. denied, 525 U.S. 1032 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

McNutt v. General Motors Acceptance Corp.,
298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

Mingus Constructors, Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Morgan v. United States,
12 Cl. Ct. 247, 251 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Murray v. United States,
817 F.2d 1580 (Fed. Cir. 1987),
cert. denied, 489 U.S. 1055 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

OAO Corp. v. United States,
17 Cl. Ct. 91 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Owen Equipment & Erection Co. v. Kroger,
437 U.S. 365 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Paxson Elec. Co. v. United States,
14 Cl. Ct. 634 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**CASES (CONTINUED):** **PAGE(S)**

Porter v. United States,
496 F.2d 583 (Ct. Cl. 1974),
cert. denied, 420 U.S. 1004 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Reynolds v. Army & Air Force Exchange Service,
846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Ridenour v. United States,
44 Fed. Cl. 202 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15, 16

Rosano v. United States, 9 Cl. Ct. 137 (1985),
aff'd, 800 F.2d 1126 (Fed. Cir. 1986) (Table),
cert. denied, 480 U.S. 907 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Schism v. United States,
316 F.3d 1259 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Shelleman v. United States,
9 Cl. Ct. 452 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

Solar Turbines, Inc. v. United States,
23 Cl. Ct. 142 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

South Corp. v. United States,
690 F.2d 1368 (Fed. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Sweats Fashions, Inc. v. Pannill Knitting Co.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Thomson v. Gaskill,
315 U.S. 442 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Trauma Serv. Group v. United States,
104 F.3d 1321 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8, 15, 17

United States v. King,
395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Mitchell,
445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**CASES (CONTINUED):** **PAGE(S)**

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . 9, 11

UNR Industries, Inc. v. United States,
962 F.2d 1013 (Fed. Cir. 1992) (in banc),
aff'd sub nom., Keene Corp. v. United States, 508 U.S. 200 (1993) . . . . . . . . . . 9

**STATUTES:**

5 U.S.C. § 4501 . . . . . . . . . . 4

5 U.S.C. § 4502 . . . . . . . . . . 4, 18

5 U.S.C. § 4503 . . . . . . . . . . 4, 11

5 U.S.C. § 4504 . . . . . . . . . . 4

28 U.S.C. § 1491 . . . . . . . . . . 1, 2

37 U.S.C. § 313 . . . . . . . . . . 10

**REGULATIONS:**

5 C.F.R. § 451.106 (1996) . . . . . . . . . . 18

5 C.F.R. § 451.106(b) (1996) . . . . . . . . . . 4, 18

5 C.F.R. § 451.107(b) (1996) . . . . . . . . . . 18

**MISCELLANEOUS:**

DLAM 1432.1 (October 19, 1987) . . . . . . . . . . passim

RCFC 12(b)(1) . . . . . . . . . . 1

RCFC 56 . . . . . . . . . . 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SIMONE ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03-2671C |
| v. | ) | (Judge Allegra) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS OR, IN**
**<u>THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>**

Pursuant to the Court's June 27, 2005 Order and Rule 12(b)(1) of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss plaintiff's complaint for lack of subject matter jurisdiction. In the alternative, pursuant to RCFC 56, defendant respectfully requests that the Court enter summary judgment in favor of the defendant.

In support of defendant's motion, we rely upon the complaint and answer, the following brief, the proposed findings of uncontroverted facts, and the attached appendix.

**<u>STATEMENT OF THE ISSUES</u>**

1. Whether this Court lacks subject matter jurisdiction to entertain the complaint pursuant to the Tucker Act, 28 U.S.C. § 1491.

2. Whether this Court must grant summary judgment to the defendant because there are no issue of material facts at issue and Ms. Anderson cannot demonstrate the requisite elements of an implied-in-fact contract.

## STATEMENT OF THE CASE

### I. Nature Of The Case

#### A. Named Parties

On November 17, 2003, Ms. Anderson filed this action seeking damages for an alleged breach of an implied-in-fact contract, and asserting jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1). Compl. ¶ 11. Ms. Anderson is a former Government employee, who was employed as an electronic commerce analyst by the Defense Supply Center – Philadelphia ("DSCP").[1] Compl. ¶ 6.

DSCP is a field activity of the Defense Logistics Agency ("DLA"). See Def. App. 33.[2] DLA is the agency of the Department of Defense ("DOD") that provides worldwide logistical support to the military and several civilian agencies.[3] Id. at 32. DLA has several inventory control points, of which DSCP is one. Id. at 33. DSCP's specific mission is the procurement of food, clothing, medical, general and industrial supplies for the United States Armed Forces. Id.

The Defense Contract Management Agency ("DCMA") was a part of DLA at the time of the events relevant to this lawsuit.[4] See http://www.dcma.mil/communicator/archives/

---

[1] DSCP was known as the Defense Personnel Support Center prior to January 13, 1998. See http://www.dscp.dla.mil/history.htm.

[2] "Def. App. __" refers to the appendix attached to defendant's motion to dismiss, or in the alternative, for summary judgment.

[3] The United States is the proper party to a suit brought in this Court. To limit confusion, however, we have set forth a brief description of the individual DOD agencies and commands named in plaintiff's complaint. Collectively, this brief will refer to these DOD agencies and commands as the "agency."

[4] At the time of the events of this lawsuit, DCMA was part of the DLA, and was known as the Defense Contract Management Command. Under a DOD reorganization, DCMA was split

fall%20winter%202000/9-History%20of%20Contracting.htm. DCMA's mission is the administration of DOD contracts, including contracts awarded by DLA. See generally http://www.dcma.mil/about.htm. DCMA is divided into three districts: east ("DCMAE"), west ("DCMAW"), and international ("DCMAI"). Id.

The Defense Finance and Accounting Service ("DFAS") is the payment arm of DOD. See generally http://www.dod.mil/dfas. DFAS handles all types of disbursement for DOD, including contract payments. Id.

### B. Cause of Action and Relief Requested

In her complaint, Ms. Anderson asks the Court to review the agency's conduct with regard to a suggestion made under its employee suggestion program, and contends that the agency's decision to implement her suggestion is the basis of an implied-in-fact contract. Compl. ¶ 20. Ms. Anderson asserts that the agency breached this contract by failing to tender her an award under its incentive program, and requests that the Court award her $35,000 worth of compensatory damages plus interest, costs and reasonable attorney's fees. Compl. ¶¶ 22-24.

## II. Statutory Authority and Personnel Manual

Congress has not mandated that agencies provide awards for suggestions, but has given the heads of agencies discretion to pay cash awards to employees when they deem it appropriate.

> The head of an agency may pay a cash award to, and incur necessary expense for the honorary recognition of, an employee who--
>
> (1) by his suggestion, invention, superior accomplishment, or other personal effort contributes to the efficiency, economy,

---

off into a separate agency and renamed on April 1, 2000. See http://www.dcma.mil/communicator/archives/fall%20winter%202000/9-History%20of%20Contracting.htm. For ease of reference, "DCMA" is used to designate this command throughout this brief.

> or other improvement of Government operations or achieves a significant reduction in paper work. . . .

5 U.S.C. § 4503 (emphasis added). Further, such cash award may not exceed $10,000, except when the head of an agency certifies to the Office of Personnel Management ("OPM") that a suggestion for which the award is proposed is "highly exceptional and unusually outstanding." 5 U.S.C. § 4502(b); 5 C.F.R. § 451.106(b). The President may also pay a cash award to an employee who creates a "significant reduction in paperwork" or offers "an exceptionally meritorious special act or service in the public interest." 5 U.S.C. § 4504.

At all relevant times, DLA administered an employee suggestion program pursuant to 5 U.S.C. § 4501 et seq. through its personnel manuals. See Compl. ¶ 13. Specifically, DLAM 1432.1 (October 19, 1987) sets forth the specific policies and practices of the agency with regard to DLA's awards programs. See Def. App. 1-31. This manual provides that the agency "may" grant an award to an employee for a suggestion when (1) the employee has submitted her suggestion in writing, (2) the suggestion has approved by the benefitting organization, and (3) when such contribution is outside the scope of the employee's job responsibilities or "so superior or meritorious that it warrants special consideration for award." Def. App. 6, § 1-7(a) (Criteria For Award). See also id. at 13, § 2-2 (Eligibility). "Cash awards may be granted to employees or member . . . based on tangible monetary savings, intangible benefits or a combination of both accruing to DLA/Government from their contributions." Id. at 7, § 1-8 (Amount Of Cash Awards). In the event that an award is approved, the manual provides a mechanism for calculating the award relative to the benefit received. See id. at 17, §§ 2-6, 2-7. The decision to

grant or not grant a cash award, or to adopt or not adopt a suggestion, however, remains "a management prerogative." Id. at 7, § 1-7(e).

## III. Statement Of Facts[5]

In the late 1990s, there were two computer programs that tracked, managed, and paid DLA contracts. These programs were shared by DFAS and DCMA. The majority of contracts administered by DCMA and paid by DFAS were managed through one computer system: the Mechanization of Contract Administration Services ("MOCAS"). A second computer system – the Standard Automation Material Management System ("SAMMS") was used by DSCP to pay contracts under $100,000. See Def. App. 50, 52-53, 55. SAMMS and MOCAS are two separate computer programs, run on two separate mainframes. The information in SAMMS is not automatically available to MOCAS. Specifically, payment information on SAMMS contracts is only available on SAMMS, not on MOCAS. Id. at 56.

Prior to July 1997, SAMMS contracts were entered into MOCAS by DFAS for administrative purposes, but not for payment purposes. DFAS also assumed the responsibility for closing out these contracts.

In August 1996, DFAS–Columbus decided that, effective fiscal year 1997, it would no longer enter into MOCAS contracts that they did not pay through MOCAS. Def. App. at 52-53, 61. On July 1, 1997, a policy memorandum was issued to notify DCMA employees of the new procedures. Id. at 52-53. This memorandum directed the cognizant DCMA offices to input SAMMS contracts into MOCAS. Id. Because MOCAS did not carry payment information on

[5] Defendant has set forth the relevant facts in Defendant's Proposed Findings of Uncontroverted Fact. The following statement of facts is provided for the Court's convenience.

SAMMS contracts, there was no procedure in place to automatically close out SAMMS contracts in MOCAS once delivery and payment were made. Id. Once DFAS' decision was implemented, DCMA had to manually research the payment history of each SAMMS contract in order to close it out in SAMMS. See id. at 36, 52.

DCMA decided to attempt to solve this close out problem. See generally Def. App. 64-76. A group, known as an integrated process team ("IPT") was formed to discuss and solve the problem. DCMA employees from both the headquarters and the districts participated in this IPT.

On November 17 and 18, 1997, Ms. Anderson submitted a written suggestion to DLA, proposing a potential solution to the contract close out problems. Compl. ¶ 15; Def. App. at 34-36. Specifically, Ms. Anderson proposed

> that when a line is paid in SAMMS, it kick out an automatic flag to the MOCAS system, whether it is based on the FIC or another code. . . . There should definitely be a key to notify MOCAS personnel which ODO's are already paid.

Id. at 36. Ms. Anderson claimed that her suggestion would eliminate the need for delinquency reports, and cut down on the amount of manual research required for all DCMAs. Id.

Because Ms. Anderson's suggestion was to have a potential impact upon numerous users of the MOCAS and SAMMS systems, her suggestion was forwarded to various DLA personnel, including members of the IPT and DCMA. Def. App. at 38, 39-40. While some of the reviewers (including Ms. Anderson's immediate supervisor at DSCP) recommended that Ms. Anderson's suggestion be implemented, DLA ultimately disapproved her suggestion. See id. at 37, 60. Compare id. at 41 with id. at 46, 47, 48, 49. Ms. Anderson's suggestion would have required programmers to write a code that permitted SAMMS and MOCAS to accomplish an interface.

Id. at 62-63. Writing such code would have been expensive and time consuming, and SAMMS and MOCAS were regarded as nearing obsolescence. Id. at 63.

DLA solved the contract close out problem by a deviation from the FAR contract close out requirements, allowing MOCAS to close out SAMMS contract upon delivery, without any reference to payment, combined with a simple labeling of the SAMMS contracts that were entered into MOCAS. Def. App. at 50-51, 64-76. When SAMMS contracts are entered into MOCAS, one of the fields is coded "category 70." Id. at 68. MOCAS automatically closes out all "category 70" codes upon delivery. Id. MOCAS does not receive a flag from SAMMS indicating when a payment is made. Id. at 56-59. Accordingly, Ms. Anderson's suggestion was never approved or implemented by DLA.

## ARGUMENT

### I. Standards of Review

This Court must grant a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) when, in view of the record presented, "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief.'" McCauley v. United States, 38 Fed. Cl. 250, 262-63 (1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)), aff'd, 152 F.3d 948 (Fed. Cir.) (table), cert. denied, 525 U.S. 1032 (1998). Moreover, although the non-jurisdictional factual allegations, as pled, must be presumed true and viewed in the light most favorable to the plaintiff, the burden of establishing the Court's jurisdiction falls squarely upon the plaintiff. See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998); Trauma Serv. Group v. United States, 104 F.3d 1321, 1324 (Fed.

Cir. 1997); Bowen v. United States, 49 Fed. Cl. 673, 675 (2001) (noting that the plaintiff bears the burden of proof upon a motion to dismiss for lack of jurisdiction), aff'd, 292 F.3d 1383 (Fed. Cir. 2002).

This Court has consistently held that when there is no genuine dispute regarding a material fact, and the moving party is entitled to judgment as a matter of law, a motion for summary judgment will be granted. See Paxson Elec. Co. v. United States, 14 Cl. Ct. 634, 642 (1988) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)); accord Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). A genuine dispute exists where the Court could render a verdict in favor of the non-movant, based upon the evidence. See Anderson, 477 U.S. at 248; Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987).

For the United States to prevail upon its motion for summary judgment, the Government only must demonstrate its entitlement to judgment as a matter of law, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. See Anderson, 477 U.S. at 248. Here, there is no genuine dispute between the parties regarding any material fact, and upon the undisputed facts of record, the United States is entitled to judgment as a matter of law.

## II. The Jurisdiction Of This Court Is Strictly Limited

"It is a fundamental precept that federal courts are courts of limited jurisdiction." Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). More particularly, "the [Court of Federal Claims] is a court of exceedingly limited statutory jurisdiction." Shelleman v. United

States, 9 Cl. Ct. 452, 455 (1986); see also Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd, 758 F.2d 665 (Fed. Cir. 1984) (Table).

The Court of Federal Claims' jurisdiction to entertain a suit and to grant relief depends upon, and is circumscribed by, the extent to which the United States has waived its sovereign immunity. United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). Waiver of sovereign immunity, and hence consent to be sued, must be expressed unequivocally – it cannot be implied. Library of Congress v. Shaw, 478 U.S. 310, 318 (1986); Testan, 424 U.S. at 399; United States v. King, 395 U.S. 1, 4 (1969). Thus, any grant of jurisdiction to this Court must be strictly construed. Bowen v. City of New York, 476 U.S. 467, 479 (1986); United States v. Mitchell, 445 U.S. 535, 538 (1980); Cosmo Const. Co. v. United States, 697 F.2d 1389, 1390 (Fed. Cir. 1982). As the United States Court of Appeals for the Federal Circuit has stated, "[i]n construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." Fidelity Construction Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983).

Moreover, "a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists…" Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 818 (1988); accord UNR Industries, Inc. v. United States, 962 F.2d 1013, 1022-23, 1025 (Fed. Cir. 1992) (in banc), aff'd sub nom., Keene Corp. v. United States, 508 U.S. 200, 208-09 (1993). Consequently, this Court "must exercise not only the traditional reluctance of federal courts to act absent specific statutory authorization…, but an additional measure of restraint growing from the principle that waivers of sovereign immunity must be narrowly construed." Beauchamp v.

United States, 6 Cl. Ct. 400, 405 (1984) (quoting Connolly v. United States, 1 Cl. Ct. 312, 314 (1982), aff'd in relevant part, 716 F.2d 882 (Fed. Cir. 1983), cert. denied, 465 U.S. 1065 (1984)). Further, plaintiff "'bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.'" American Pacific Roofing Co. v. United States, 21 Cl. Ct. 265, 267 (1990) (quoting Reynolds v. Army & Air Force Exchange Service, 846 F.2d 746, 748 (Fed. Cir. 1988)); accord Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994); Thomson v. Gaskill, 315 U.S. 442, 446 (1942); McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189-90 (1936).

## III. The Employee Suggestion Award Statute And The DLA Manual Do Not Entitle Ms. Anderson To Any Money Damages

There is no mandatory statute that compels the payment of any monies to Ms. Anderson.[6] The criterion to determine whether a statute requires monetary relief is "whether the statutes or constitutional provisions allegedly violated require the payment of money damages for the violation." Murray v. United States, 817 F.2d 1580, 1583 (Fed. Cir. 1987), cert. denied, 489 U.S. 1055 (1989). For example, in Adair v. United States, 227 Ct. Cl. 345, 648 F.2d 1318 (1981), the Court held that it lacked jurisdiction under the Tucker Act to entertain a money claim under 37 U.S.C. § 313, which provided executive officials discretion to make variable incentive pay awards. The Court reasoned that the language of that statute allowed the agencies wide latitude to prescribe regulations, determine the acceptability of incentive pay agreements, and then decide

[6] While Ms. Anderson has not explicitly sought damages upon the theory of a money mandating statute, in the present case such analysis is a necessary prerequisite to analyzing her implied-in-fact contract claim, because the statute and manual concerning DLA's employee award programs would form an essential element of any alleged implied-in-fact contract, as well as provide an alternative theory of recovery.

whether or not to make an award. Adair, 227 Ct. Cl. at 347, 350-51. The Court stated that "[i]t is implicit in the holding of Testan that a statute providing for solely discretionary payment of money does not give rise to a right to recover money damages from the United States." Id. at 350 (citing Testan, 424 U.S. at 399-400).

Also, in Collins v. United States, 67 F.3d 284, 286 (Fed. Cir. 1995), the Court examined the statutory language relied upon by the claimant, and found that it was "permissive and not mandatory" and did not give rise to a claim of money damages against the United States. See also Huston v. United States, 956 F.2d 259, 261 (Fed. Cir. 1992) (statute providing that employees may be paid at the highest rate was not pay-mandating).

In the present case, the statutory provision authorizing DLA to pay cash awards under an employee suggestion program, 5 U.S.C. § 4503, has been found to be discretionary, and the statute itself does not mandate the payment of any money. Rosano v. United States, 9 Cl. Ct. 137 (1985), aff'd, 800 F.2d 1126 (Fed. Cir. 1986) (Table), cert. denied, 480 U.S. 907 (1987). Indeed, the plain language of the statute merely provides that the head of an agency "may pay a cash award to" an employee. 5 U.S.C. § 4503 (emphasis added).

Further, the DLA manual providing for the implementation of DLA's employee suggestion program, DLAM 1432.1 (October 19, 1987), also is neither binding nor money mandating. Def. App. 1-31. The language of DLAM 1432.1 mirrors the language of the statute concerning the purely discretionary nature of any award, and explicitly provides that "[a]n award is not an entitlement. The decision to grant or not to grant an award, or to adopt or not to adopt a suggestion, is a management prerogative, thus, is not grievable." Id. at 7, § 1-7(e). See also id. at 14, § 2-2(g) ("The decision to grant or not grant an award, or to adopt or not to adopt a

suggestion, is a management prerogative."). Throughout the manual, award is described as a discretionary act that "may" be considered by DLA in recognition of an employee's contribution, rather than as an entitlement to a cash award that will be provided upon meeting certain conditions precedent. See id. at 6, § 1-7(a) (Criteria For Granting Award) ("An award may be granted . . ."); 7, § 1-8(a) (Amount Of Award) ("Cash awards may be granted. . ."); 12, § 1-14(a) (Awards Over $10,000) ("The Director, DLA, has authority to approve cash awards of up to $10,000 for civilian and military personnel. Awards in excess of this amount, up to and including $25,000, may be approved by the Director, OPM for civilian employees. . . . An additional award may be approved by the President."); 13, § 2-2(e) (Eligibility) ("Awards may be granted to former employees. . ."); 16, § 2-5(a) (Basis For Granting Cash Awards For Suggestions) ("Cash awards may be granted for adopted suggestions that result in tangible monetary savings, intangible benefits, or a combination of both."); 17, § 2-6(a) (Cash Awards Based On Tangible Benefits) ("Cash awards for tangible monetary savings may be granted . . ."); 17, § 2-7 (Cash Awards Based On Intangible Benefits) ("awards in this category are recommended on the basis of judgment . . .").

Accordingly, neither the statute nor the manual implementing the statute may be properly construed as money mandating.

## IV. Ms. Anderson Cannot Demonstrate The Existence of An Implied-In-Fact Contract

### A. Award Under DLA's Suggestion Program Remains Wholly Discretionary

There is a presumption that public employment does not turn on contract theory, but is "accomplished by appointment and controlled by statute, regulation, and Executive Order." Bigler v. United States, 230 Ct. Cl. 985, 986 (1982). See also Hamlet v. United States, 63 F.3d

1097, 1101 (Fed. Cir. 1985), cert. denied, 517 U.S. 1155 (1996); Chu v. United States, 773 F.2d 1226, 1229 (Fed. Cir. 1985) ("[A]bsent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government."); Kania v. United States, 650 F.2d 264, 268 (Ct. Cl. 1981) ("[T]he rights of civilian and military public employees against the government do not turn on contract doctrines.").

Ms. Anderson has not rebutted this presumption that the benefits and emoluments of her position are not a matter of contract, and can not demonstrate the required elements to establish a contract with the Government under the facts of her complaint. There is no single writing executed by the parties evidencing their mutual intent or the terms of the offer and acceptance. The remainder of the relevant documents were developed in the course of DLA's evaluation of Ms. Anderson's suggestions. This series of documents, whether considered in whole or in part, do not constitute the elements of a contract.

In the past, however, the Court has permitted recovery under certain employee suggestion programs on the basis of a contract implied in fact.[7] Ridenour v. United States, 44 Fed. Cl. 202, 207-08 (1999). See also Griffin v. United States, 215 Ct. Cl. 710, 713-714 (1978). But see Kempinski v. United States, 164 Ct. Cl. 451, cert. denied, 377 U.S. 981 (1964). For example, in Ridenour v. United States, this Court held that a program administered by the Social Security Administration ("SSA") could give rise to an implied-in-fact contract upon the agency's implementation of the suggestion at issue. Specifically, the Court stated that the SSA's

[7] Prior decisions of the Court, although persuasive and helpful, do not constitute binding precedent for subsequent decisions of the Court. See South Corp. v. United States, 690 F.2d 1368, 1371 (Fed. Cir. 1982); Adams v. United States, 42 Fed. Cl. 463, 473 (1998).

> program is an invitation to submit offers which, if accepted by the agency, entitle the offeror to recognition that may include a cash award determined in accordance with published guidelines. An exchange of this character, occurring under the sponsorship of a formal program that holds out the commitment to award, gives rise to enforceable expectations correctly described as an implied-in-fact contract.

Id. at 207 (emphasis added).

The SSA's program in Ridenour, however, was different from the DLA's suggestion program, in that the SSA's program made cash award mandatory upon meeting certain conditions. Specifically, the Court observed that the SSA's instructions explicitly provided that "[a] cash award for the suggestion will also be granted if the suggester is eligible [i.e., is a government employee] and if the benefits to the Government have a value of at least $1,000." Id. at 208. The Court regarding this directive as mandating a cash award under certain circumstances. Id. In contrast, as noted above, the language of DLAM 1432.1 specifically states throughout that a cash award "may" be granted, not that a cash award "will" be granted. See id. at 6, § 1-7(a), 7, § 1-8(a). Any possible award under the DLA's manual remains, at best, a gratuity under the express terms of the manual. It is well settled that such "[g]ratuities "involve no agreement of parties; and the grant of them creates no vested right.'" Schism v. United States, 316 F.3d 1259, 1305 (Fed. Cir. 2002) (citations omitted). Accordingly, there is no enforceable right to a gratuitous award.

This is not to suggest that DLAM 1432.1 contains no binding procedures. The manual, for example, does provide certain procedures for calculating an award, if such award has been approved. See, e.g., Def. App. at 30-31. The threshold question of initial entitlement to any

particular award, however, remains wholly discretionary, and thus cannot be the basis of a contract claim.

**B. Ms. Anderson Cannot Demonstrate That Her Suggestion Was Accepted And Implemented By An Authorized Government Official**

Even if this Court were to find that the DLA's suggestion program is substantially similar to the SSA's program in Ridenour, Ms. Anderson's claim must fail since her suggestion was never accepted nor implemented by DLA.

The general requirements of both express and implied-in-fact contracts with the Government are proof of: (1) mutuality of intent to contract; (2) consideration; (3) lack of ambiguity in offer and acceptance; and (4) sufficient conduct by a Government representative having actual authority to bind the Government in contract. Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997) ("mutual intent to contract including an offer, an acceptance, and consideration"); City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990), cert. denied, 501 U.S. 1230 (1991).

Implied-in-fact contracts require the same contractual elements as are required to establish an express contract, only the nature of the evidence differs. Chavez v. United States, 18 Cl. Ct. 540, 544 (1990); Morgan v. United States, 12 Cl. Ct. 247, 251 (1987). Although proof of an implied-in-fact contract is circumstantial, plaintiff must unambiguously show each of the elements of an express contract. OAO Corp. v. United States, 17 Cl. Ct. 91, 99 (1989). The general rule in government contract law is that a contract implied-in-fact is one "founded upon a meeting of minds which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstance, their tacit

understanding." Porter v. United States, 496 F.2d 583, 590 (Ct. Cl. 1974), cert. denied, 420 U.S. 1004 (1975), quoting Baltimore & Ohio R.R. v. United States, 261 U.S. 592 (1923).

A mutual intent to contract includes an offer, acceptance, and consideration. Solar Turbines, Inc. v. United States, 23 Cl. Ct. 142, 149-50 (1991). The circumstances of a contract implied-in-fact must indicate that the parties have, in fact, taken upon themselves corresponding obligations and liabilities, and have come to a meeting of the minds. Chavez, 18 Cl. Ct. at 545. Plaintiff must show a definite offer by one party and an unconditional acceptance by the other. Delco Electronics Corp.v. United States, 12 Cl. Ct. 367, 370 (1987), aff'd, 909 F.2d 1495 (Fed. Cir. 1990) (Table).

As noted above, this Court has found the existence of an implied-in-fact contract under certain employee suggestion programs based upon the Government's unambiguous acceptance and implementation of an employee suggestion. Ridenour v. United States, 44 Fed. Cl. 202, 207-08 (1999). For example, in Ridenour the employee's suggestion was accepted and implemented by the agency, and the plaintiff was paid what was alleged to be an inadequate amount for the suggestion. Id. In contrast, in the present case, Ms. Anderson's suggestion was rejected and was never implemented, and as such, no money has been disbursed to Ms. Anderson.

Ms. Anderson's suggestion was carefully reviewed, and although it was determined that she pointed out a legitimate problem, her solution was not cost effective. See Def. App. at 62-63. The final determination of DLA was to reject her suggestion. Id. at 37. See generally id. at 46, 47, 48, 49. It is true that several local DLA officials, including those at DSCP, recommended that her suggestion be approved. Id. at 38, 41. However, their recommendation alone were not enough to constitute the approval of a suggestion, as any changes to the MOCAS and SAMMS

systems would have an effect upon other components of DLA. Id. at 38, 39-40. The other components of DLA who reviewed Ms. Anderson's suggestion generally rejected her proposal. Id. at 46, 47, 48, 49.

Further, even assuming that there could be a valid implied-in-fact contract despite this unambiguous rejection, Ms. Anderson's suggestion was also not implemented. Ms. Anderson had suggested "that when a line is paid in SAMMS, it kick out an automatic flag to the MOCAS system, whether it is based on the FIC or another code. . .There should definitely be a key to notify MOCAS personnel which ODO's are already paid." Def. App. at 36. SAMMS, however, does not send a flag to MOCAS upon payment of a contract. Id. at 56-60. MOCAS closes out SAMMS contracts upon delivery, not payment. See generally id. at 64-76. Rather than solve the close out problem by implementing Ms. Anderson's costly suggestion, DLA solved the contract close out problem by a deviation from the FAR contract close out requirements, allowing MOCAS to close out SAMMS contract upon delivery, without any reference to payment. Id. MOCAS remains unaware of whether or not payment has occurred. Id. at 56-60.

Accordingly, this case is more readily identifiable with Kempinski v. United States, 164 Ct. Cl. 451, cert. denied, 377 U.S. 981 (1964), where summary judgment was granted in part because the employee's suggestion was rejected by the agency. A rejected and unimplemented suggestion cannot form the basis of an implied-in-fact contract.

Even if a DLA official had approved her suggestion, plaintiff has failed to plead the requisite action by an officials with authority to make a contract. The approval of an official without authority to make a contract obligating appropriated funds does not bind the Government contractually. Trauma Serv. Group v. United States, 104 F.3d at 1326; Grismac Corp. v. United

States, 214 Ct. Cl. 39, 556 F.2d 494 (1977). In her complaint, Ms. Anderson does not even identify any particular Government representative who entered into the alleged implied-in-fact contract.

More specifically, Ms. Anderson cannot demonstrate any legal authority for the amounts requested. Assuming arguendo that Ms. Anderson's suggestion had been implemented, the requested relief exceeds the statutory authority granted to the DLA officials. For her suggestion, the amount of the award requested by the complaint exceeds $10,000. Compl. ¶¶ 22, 24. No DLA official has the statutory authority to approve an award in excess of $10,000. Under 5 U.S.C. § 4502, agency officials may not approve the requested award to the extent that it exceeds $10,000, without first obtaining the approval of OPM and the suggestion for which the award is proposed must be "highly exceptional and unusually outstanding." 5 U.S.C. § 4502(b). Section 4502 and OPM regulations make the approval of award amounts in excess of $10,000 discretionary with OPM. 5 C.F.R. § 451.106. In fact, the OPM regulation in effect when Ms. Anderson submitted her suggestions expressly stated that OPM may "approve or disapprove" agency recommendations for cash awards "in excess of $10,000 but not over $25,000." 5 C.F.R. § 451.106(b) (1996). Ms. Anderson does not allege that OPM approved any award in excess of $10,000 but not over $25,000. To the extent that the recommended award exceeds $25,000, review and "final approval" by the President is required. 5 C.F.R. § 451.107(b) (1996). Ms. Anderson does not allege that the President approved an award over $25,000.

In sum, the uncontroverted facts demonstrate that DLA had no intention to enter into a contract with Ms. Anderson. Plaintiff cannot meet her burden of establishing mutual intent to contract, an unambiguous offer and acceptance, or a meeting of the minds, and has not pled facts

supporting such findings. Similarly, in Hayes v. United States, 20 Cl. Ct. 150 (1990), aff'd, 928 F.2d 411 (Fed. Cir. 1991) (Table), the Court dismissed a Postal Service employee's suit for breach of contract where the employee submitted a suggestion under the employee suggestion program, and received an award for his suggestion. The Court found that merely because the employee submitted a suggestion in accordance with the Postal Service's guidelines and received an award, he cannot construe such actions to become a contract, and the Tucker Act "does not extend to every agreement, understanding, or compact which can be semantically stated in terms of offer and acceptance or meeting of the minds." Id. at 156 (citing Kania v. United States, 227 Ct. Cl. at 464-65; 650 F.2d at 268). A contract must be "specifically spelled out as a contract." Id. Ms. Anderson did not enter into an implied-in-fact contract with the United States, and is thereby not entitled to any relief in this Court.

## CONCLUSION

For the reasons above, the Court should conclude that it does not possess jurisdiction of plaintiff's complaint. In the alternative, the Court should grant summary judgment for defendant, and dismiss the complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Robert E. Kirschman
ROBERT E. KIRSCHMAN
Assistant Director

/s/ Steven M. Mager

STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street, NW
Washington, D.C. 20530
Tele: (202) 616-2377

August 8, 2005 Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 8th day of August 2005, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager
Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice

# APPENDIX

## INDEX TO APPENDIX


**DOCUMENT** **PAGE(S)**

DLAM 1432.1, SUPERIOR ACCOMPLISHMENT AWARDS PROGRAM (October 19, 1987) . . . . . 1-31

DEFENSE LOGISTICS AGENCY, DEFENSE LOGISTICS AGENCY AT A GLANCE (undated) (pamphlet) . . . . . 32-33

Suggestion 98-DP-008, submitted by Simone Anderson (November 17, 1997) . . . . . 34-36

Memorandum from Thomas D. Ray, Assistant Executive Director, Procurement Management Directive, Defense Logistics Agency (April 15, 1999) with attached evaluations of suggestion 98-DP-008 . . . . . 37-49

Memorandum from Major General Drewes, Deputy Director (Acquisition), Defense Logistics Agency re: Deviation from FAR, DFARS (July 1, 1997) . . . . . 50-51

Memorandum from Major General Drewes, Deputy Director (Acquisition), Defense Logistics Agency re: MOCAS data input of Other Disbursing Office Contracts (July 1, 1997) . . . . . 52-53

Excerpts from Deposition of Vivian Hill, Defense Contract Management Agency (May 4, 2005) . . . . . 54–60

Memorandum from Eleanor Spector, Director of Defense Procurement, Office of the Under Secretary of Defense re: DFAS-Columbus disbursements (August 28, 1996) . . . . . 61

E-mail from Susan Van Meter to David Schimmel re: cost estimate for suggestion 98-DP-008 (April 10, 1998) . . . . . 62-63

Acceptance Test Plan for Automatic Close Out of DLA Other Disbursing Office Contracts (January 4, 1999) . . . . . 64-76