**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SIMONE ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03-2671C |
| v. | ) | (Judge Allegra) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(d)(1), of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits the following proposed findings of uncontroverted fact:

1. Ms. Anderson is a former Government employee, who was employed as an electronic commerce analyst by the Defense Supply Center – Philadelphia ("DSCP"). Compl. ¶ 6.
2. DSCP was known as the Defense Personnel Support Center prior to January 13, 1998. http://www.dscp.dla.mil/history.htm.
3. DSCP is a field activity of the Defense Logistics Agency ("DLA"). Def. App. 33.[1]
4. DLA is the agency of the Department of Defense ("DOD") that provides worldwide logistical support to the military and several civilian agencies. Id. at 32.
5. DLA has several inventory control points, of which DSCP is one. Id. at 33.
6. DSCP's specific mission is the procurement of food, clothing, medical, general and industrial supplies for the United States Armed Forces. Id.
7. The Defense Contract Management Agency ("DCMA") was a part of DLA at the time of

[1] "Def. App. __" refers to the appendix attached to defendant's motion to dismiss, or in the alternative, for summary judgment.

the events relevant to this lawsuit. Under a DOD reorganization, DCMA was split off into a separate agency and renamed on April 1, 2000. See http://www.dcma.mil/communicator/archives/fall%20winter%202000/9-History%20of%20Contracting.htm.

8. DCMA's mission is the administration of DOD contracts, including contracts awarded by DLA. See generally http://www.dcma.mil/about.htm.

9. DCMA is divided into three districts: east ("DCMAE"), west ("DCMAW"), and international ("DCMAI"). Id.

10. The Defense Finance and Accounting Service ("DFAS") is the payment arm of DOD. See generally http://www.dod.mil/dfas.

11. DFAS handles all types of disbursement for DOD, including contract payments. Id.

12. At all relevant times, DLA administered an employee suggestion program pursuant to 5 U.S.C. § 4501 et seq. through its personnel manuals. See Compl. ¶ 13.

13. Specifically, DLAM 1432.1 (October 19, 1987) sets forth the specific policies and practices of the agency with regard to DLA's awards programs. See Def. App. 1-31.

14. DLAM 1432.1 provides that the agency "may" grant an award to an employee for a suggestion when (1) the employee has submitted her suggestion in writing, (2) the suggestion has approved by the benefitting organization, and (3) when such contribution is outside the scope of the employee's job responsibilities or "so superior or meritorious that it warrants special consideration for award." Def. App. 6, § 1-7(a) (Criteria For Award). See also id. at 13, § 2-2 (Eligibility).

15. DLAM 1432.1 states that "[c]ash awards may be granted to employees or member . . . based on tangible monetary savings, intangible benefits or a combination of both accruing to DLA/Government from their contributions." Id. at 7, § 1-8 (Amount Of Cash

Awards).

16. In the event that an award is approved, DLAM 1432.1 provides a mechanism for calculating the award relative to the benefit received. See id. at 17, §§ 2-6, 2-7.

17. DLAM 1432.1 states that "[a]n award is not an entitlement. The decision to grant or not to grant an award, or to adopt or not to adopt a suggestion, is a management prerogative, thus, is not grievable." Id. at 7, § 1-7(e).

18. DLAM 1432.1 states that "[t]he decision to grant or not grant an award, or to adopt or not to adopt a suggestion, is a management prerogative." Id. at 14, § 2-2(g)

19. In the late 1990s, there were two computer programs that tracked, managed, and paid DLA contracts. These programs were shared by DFAS and DCMA. The majority of contracts administered by DCMA and paid by DFAS were managed through one computer system: the Mechanization of Contract Administration Services ("MOCAS"). A second computer system – the Standard Automation Material Management System ("SAMMS") was used by DSCP to pay contracts under $100,000. See Def. App. 50, 52-53, 55..

20. SAMMS and MOCAS are two separate computer programs, run on two separate mainframes.

21. The information in SAMMS is not automatically available to MOCAS.

22. Payment information on SAMMS contracts is only available on SAMMS, not on MOCAS. Id. at 56.

23. Prior to July 1997, SAMMS contracts were entered into MOCAS by DFAS for administrative purposes, but not for payment purposes. DFAS also assumed the responsibility for closing out these contracts.

24. On or about August 1996, DFAS–Columbus decided that it would no longer enter into MOCAS contracts that they did not pay through MOCAS, effective fiscal year 1997. Def. App. at 52-53, 61.

25. On or about July 1, 1997, a policy memorandum (the "July 1, 1997 memorandum") was issued to notify DCMA employees of the new procedures as a result of the DFAS–Columbus policy change. Id. at 52-53.

26. The July 1, 1997 memorandum directed the cognizant DCMA offices to input SAMMS contracts into MOCAS. Id.

27. Because MOCAS did not carry payment information on SAMMS contracts, there was no procedure in place to automatically close out SAMMS contracts in MOCAS once delivery and payment were made. Id.

28. Once DFAS' decision was implemented, DCMA had to manually research the payment history of each SAMMS contract in order to close it out in SAMMS. Id. at 36, 52.

29. DCMA decided to attempt to solve this close out problem. See generally id. at 64-76.

30. A group, known as an integrated process team ("IPT") was formed to discuss and solve the problem. DCMA employees from both the headquarters and the districts participated in this IPT.

31. On November 17 and 18, 1997, Ms. Anderson submitted a written suggestion to DLA, proposing a potential solution to the contract close out problems. ("Suggestion 98-DP-008" or "Ms. Anderson's suggestion") Compl. ¶ 15; Def. App. at 34-36.

32. Ms. Anderson's suggestion proposed that

> that when a line is paid in SAMMS, it kick out an automatic flag to the MOCAS system, whether it is based on the FIC or another code. . . . There should definitely be a key to notify MOCAS

personnel which ODO's are already paid.

Id. at 36.

33. Ms. Anderson's suggestion provided that implementation of the suggestion would eliminate the need for delinquency reports, and cut down on the amount of manual research required for all DCMAs, resulting in across the board savings. Id.

34. Because Ms. Anderson's suggestion was to have a potential impact upon numerous users of the MOCAS and SAMMS systems, her suggestion was forwarded to various DLA personnel, including members of the IPT and DCMA. Def. App. at 38, 39-40.

35. Some of the reviewers (including Ms. Anderson's immediate supervisor at DSCP) recommended that Ms. Anderson's suggestion be approved. See id. at 41.

36. Some of the reviewers recommended that Ms. Anderson's suggestion be disapproved. See id. at 46, 47, 48, 49.

37. DLA ultimately disapproved of Ms. Anderson's suggestion. See id. at 37, 60.

38. Ms. Anderson's suggestion would have required programmers to write a code that permitted SAMMS and MOCAS to accomplish an interface. Id. at 62-63.

39. Writing such code would have been expensive, and SAMMS and MOCAS were regarded as nearing obsolescence. Id. at 63.

40. DLA solved the contract close out problem by a deviation from the FAR contract close out requirements, allowing MOCAS to close out SAMMS contract upon delivery, without any reference to payment, combined with a simple labeling of the SAMMS contracts that were entered into MOCAS. Def. App. at 50-51, 64-76.

41. When SAMMS contracts are entered into MOCAS, one of the fields is coded "category 70." Id. at 68.

42. MOCAS automatically closes out all "category 70" codes upon delivery. Id.

43. MOCAS does not receive a flag from SAMMS indicating when a payment is made. Id. at 56-59.

44. Ms. Anderson's suggestion was never implemented by DLA. Id. at 66.

45. There is no single writing executed by the parties evidencing the alleged contract.

46. The Office of Personnel Management did not approve any award to Ms. Anderson for Suggestion 98-DP-008.

47. The President of the United States did not approve any award to Ms. Anderson for Suggestion 98-DP-008.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Robert E. Kirschman
ROBERT E. KIRSCHMAN
Assistant Director

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street, NW
Washington, D.C. 20530
Tele: (202) 616-2377

August 8, 2005

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 8th day of August 2005, a copy of the foregoing "DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager
Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice