No. 03-2671C
Judge Allegra

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

SIMONE ANDERSON,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

PLAINTIFF'S RESPONSIVE BRIEF TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, WITH ATTACHED APPENDIX

Respectfully submitted,

/s/ Matthew V. Portella, Esquire
PORTELLA & BJORKLUND, LLC
126 White Horse Pike
Haddon Heights, New Jersey 08035
856-310-9800
(Fax): 856-546-4711
mvpmusic@comcast.net

October 3, 2005

Attorneys for Plaintiff

# TABLE OF CONTENTS

| | PAGE |
| --- | --- |
| PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT | 1 |
| PLAINTIFF'S RECITAL OF DISPUTED FACTS | 3 |
| ARGUMENT | 5 |
| I. There Is Proper Subject Matter Jurisdiction Pursuant to the Tucker Act for the Complaint | 5 |
| II. Genuine Disputes Concerning the Existence of an Implied in Fact Contract Preclude Summary Judgment in Favor of the Defendant | 7 |
| CONCLUSION | 11 |

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES:**

Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)............................................ 8

Baltimore & Ohio R.. Co. v. United States, 261 U.S. 592, 597 (1923)..................... 9

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)................................................ 7

Chavez v. United States, 18 Cl. Ct. 540, 544 (1989)................................................ 8

City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990).................... 8

Dia Navigation Co. v. Pomeroy, 27 F.3d 918 (3rd Cir. 1994).................................. 6, 7

Doe v. United States, 100 F.3d 1576, 1580-82 (Fed. Cir. 1996).............................. 6

H.F. Allen Orchards v. United States, 749 F.2d 1571, 1575 (Fed. Cir. 1984).......... 8

Hercules, Inc. v. Unites States, 116 S.Ct. 981, 986 (1996)...................................... 7

Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)........................................................................................................... 8

McGee v. United States, 5 Cl. Ct. 480 (1984)......................................................... 7

National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962)......................................................................................................... 8

Ont. Power Generation, Inc., v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004)........................................................................................................... 6

Ridenour v. United States, 44 Fed. Cl. 202, 207 (1999)........................................... 9

Russell Corp. v. United States, 537 F.2d 474, 482 (Ct. Cl. 1976)............................ 8

United States v. Testan, 424 U.S. 392, 400 (1976).................................................. 5

United States v. White Mountain Apache Tribe, 537 U.S. 465, 472-73 (2003)......... 5

**STATUTES:**

5 U.S.C. § 4501........................................................................................................ 6

5 U.S.C. § 4503........................................................................................................ 6

28 U.S.C. §1491(a)(1)............................................................................................. 5, 6

**RULES:**

Fed. R. Civ. P. 56c.................................................................................................. 7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SIMONE ANDERSON, Plaintiff, | : | |
| v. | : | No. 03-2671C (Judge Allegra) |
| UNITED STATES OF AMERICA, Defendants. | : | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

1 - 28. The Plaintiff does not dispute paragraphs one through twenty-eight of the defendant's Statement of Undisputed Material Facts.

29. Dispute. The DCMA did not attempt to solve the automatic closeout problem until after Ms. Anderson submitted a written suggestion to DLA proposing a potential solution to the contract close out problem. Pla. App. 29-30.[1]

30. Disputed. No group was formed to deal with the problem until the Plaintiff submitted her written suggestion. Once the Plaintiff submitted her suggestion, it was forwarded to numerous DLA personnel including members of the IPT and DCMA. Id. at 17.

31. Admitted.

32. Admitted.

33. Admitted.

[1] "Pla. App. ___" refers to the Appendix attached to Plaintiff's response brief to Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment.

34. Admitted.

35. Admitted.

36. Admitted.

37. Disputed.

38. Disputed.

39. Disputed. SAMMS and MOCAS are still in existence and operating. Id. at 38-39.

40. Admitted in part and disputed in part. The contract close out problem was solved/implemented. However, it was solved by the creation of a new remark of "70". Following that, a deviation was created. Id. at 19-20; 33-34.

41. Admitted.

42. Admitted.

43. Admitted

44. Disputed. Ms. Anderson's suggestion was implemented by DLA. Id. at 21-26; 36; 40-42.

45. Disputed. There are numerous writings executed by the parties evidencing the contract, namely, ESP Proposal dated November 17, 1997 by Simone Anderson (Id. at 1-2); ESP Proposal Evaluation dated January 5, 1998 (Id. at 4); Request for ADP Application dated December 2, 1997 (Id. at 5-7); e-mail from Patricia Clark to Donald Andrews dated February 18, 1997 (Id. at 8); Suggestion Evaluation and Transmittal dated March 10, 1999 from Thomas Schulkers (Id. at 9); e-mail from Patricia Clark to Raymond Breuninger dated March 19, 1999 (Id. at 10-11); Suggestion Evaluation and Transmittal dated April 13, 1999 from Robert L. Gee (Id. at 12); Suggestion Evaluation and Transmittal dated April 26, 1999 from Eva J. Golden (Id. at 13); e-Mail from Donald

Andrews to Venetta Stewart dated June 3, 1999 (Id. at 14); and e-mail from Raymond Breuninger to Donald Andrews dated June 16, 1999 (Id. at 15).

46. Admitted.

47. Admitted.

**PLAINTIFF'S RECITAL OF DISPUTED FACTS**

1. On November 17-18, 1997, Ms. Anderson delivered a suggestion to DLA proposing a potential solution to the contract close out problem. This suggestion was delivered to Diana Maykowskyj, Chris Bruno and Bart Hogan. Id. at 17.

2. On November 19, 1997, the suggestion was received by the defendant. Id.

3. The suggestion was given the highest priority due to the associated cost savings of seven million to 1.5 billion dollars annually. Id. at 17; 32.

4. As part and parcel of following through with the suggestion, several individuals were assigned different tasks. Notably, Bart Hogan was tasked with completing an Automated Work Request. Id. at 17.

5. On December 2, 1997, a Request for ADP Application was submitted by Gerald Waddington regarding Ms. Anderson's Suggestion. Id. at 5.

6. On December 12, 1997, Bart Hogan submitted AWR UN-00H8-004 ("AWR"), which "called for DLA ODO contract to be assigned to the contract administration report Part B to permit automatic closeout." Id. at 3; 28.

7. The AWR submitted by Bart Hogan is not subject to an incentive award. Id. at 31.

8. No documentation exists to demonstrate that this AWR pre-dated Ms. Anderson's suggestion. Id. at 29-30.

9. On January 5, 1998, Ms. Anderson's suggestion was approved by Gerald Waddington. Mr. Waddington rated the value of the benefit of the suggestion as high and the extent of the application as broad. Id. at 4.

10. On February 18, 1999, Donald Andrews sent Theresa Venti an e-mail stating that according to headquarters, Ms. Anderson's suggestion had been implemented. Id. at 8.

11. On March 10, 1999, Thomas Schulkers, DSCC-BPS, disapproved Ms. Anderson's suggestion stating that the AWR is currently in testing and will permit the automatic closeout of ODO contract in MOCAS. Completion of this AWR will accomplish the idea of the suggestion. Id. at 9.

12. On March 19, 1999, Patricia Clark sent Raymond Breuninger an e-mail which stated that she needed to come up with the amount of money to award to Ms. Anderson since she received an e-mail from DLA that the savings based on Ms. Anderson's suggestion was phenomenal, seven-million dollars a year across DLA. Id. at 10-11.

13. On April 13, 1999, Robert L. Gee, disapproved Ms. Anderson's suggestion, stating that Mr. Hogan's AWR resolves the problem by automatically closing out ODO contracts/orders in the MOCAS system thirty-days after completion date. Id. at 12.

14. On April 26, 1999, Eva Golden, DSCR-RZP reviewed Ms. Anderson's suggestion and stated that Mr. Hogan's AWR will resolve the problem. Id. at 13.

15. On June 3, 1999, Donald Andrews send Venetta Stewart and e-mail stating that the program was completed and functional at DISC and released to DSCC and DSCR for installation and as such it was impossible for DLA and the other ICPS to deny the suggestion. Id. at14.

16. On June 16, 1999, Raymond Breuninger sent Donald Andrews an e-mail regarding

the tentative installation of the automatic closeout program to the District East database MOCH for July 10, 1999 and District West MOCL database for July 17, 1999. Id. at 15.

17. Ultimately, Ms. Anderson's suggestion was implemented by creating logic that whenever MOCAS sees a value of "70" in field R9, the contract will automatically move from one section of MOCAS to a separate section of MOCAS that will trigger an automatic closeout. Id. at 21-26; 36.

## ARGUMENT

### I. There Is Proper Subject Matter Jurisdiction Pursuant to the Tucker Act for the Complaint

The United States Court of Federal Claims, pursuant to the Tucker Act, 28 U.S.C. §1491(a)(1), has

> jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

The Tucker Act is a jurisdictional statute. Therefore, a plaintiff must bring an action based on a specific source of law. United States v. Testan, 424 U.S. 392, 400 (1976). The United States Supreme Court has stated that all that is necessary for a statute to be interpreted as compensation mandating is that it is "reasonably amendable to the reading that it mandates a right of recovery in damages. While the premise to a Tucker Act claim will not be 'lightly inferred,' a fair inference will do." United States v. White Mountain Apache Tribe, 537 U.S. 465, 472-73 (2003). A statute is money mandating if it "grants the claimant, expressly or by implication, a right to be paid a certain

sum." Ont. Power Generation, Inc., v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004) (quoting Eastport Steamship, 372 F.2d at 1007).

Even statutory language as is found here that includes language such as "may award and pay" has been considered money-mandating when the intent of the statute is that an individual is entitled to payment from the United States if certain conditions are met. Doe v. United States, 100 F.3d 1576, 1580-82 (Fed. Cir. 1996). The Employee Suggestion Program, 5 U.S.C. §4501 et seq., is an unambiguous mandate for compensation and clearly fits the definition of money mandating. The ESP commands the United States to pay Ms. Anderson a sum of money upon proof of certain conditions, namely, (1) submission of a suggestion in writing; (2) approval of the award by the benefitting organization; and (3) contribution outside the scope of the employee's job responsibilities or "so superior or meritorious that it warrants special consideration for award." Ms. Anderson's suggestion was submitted in writing, was approved and outside the scope of her job responsibilities.

Venue is proper in the United States Court of Federal Claims because this Court has original and exclusive jurisdiction for non-tort monetary damages sought against the United States in excess of $10,000.00. See, 28 U.S.C. § 1491; Dia Navigation Co. v. Pomeroy, 27 F.3d 918 (3rd Cir. 1994). In addition, pursuant to 5 U.S.C. § 4503, the head of an agency may pay a cash award to, and incur the necessary expense for the honorary recognition of an employee who by her suggestion, invention, superior accomplishment or other personal effort contributes to the efficiency, economy or other improvement of government operations. When an employee's suggestion is officially adopted, an implied-in-fact contract comes into existence and the and the United States Court of Federal Claims has jurisdiction under 28 U.S.C. § 1491 over claims for an amount awarded

under such implied contract. However, where it is undisputed that the suggestion was not officially adopted, the Court lacks jurisdiction over the claim for award. McGee v. United States, 5 Cl. Ct. 480 (1984).

A substantive right must be found in some other source of law, such as an implied-in-fact contract. The United States Supreme Court has distinguished between a contract implied-in-fact and a contract implied in law by stating:

> An agreement implied in fact is founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred as the fact from conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding. By contrast, an agreement implied in law is a fiction of law where a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress.
>
> Hercules, Inc. v. Unites States, 116 S.Ct. 981, 986 (1996).

Following Hercules and Dia Navigation, the conduct of the defendant in the instant matter through its letters of commendation to Ms. Anderson and its publishing of the calculation of award table indicate that a contract implied-in-in fact existed between Ms. Sanderson and the defendant. Therefore, there is Tucker Act jurisdiction for the instant complaint and the Defendant's Motion should be denied.

## II. Genuine Disputes Concerning the Existence of an Implied in Fact Contract Preclude Summary Judgment in Favor of the Defendant

In order to obtain summary judgment, the moving party must demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56c; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden of demonstrating the absence of any genuine issue of material fact is on the moving party. Id. at 325. A factual dispute is material only if it might affect the outcome of the suit under the governing law.

Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). Whether a genuine issue of material fact is presented will be decided based on whether a reasonable jury could return a verdict for the non-moving party. Id. When evaluating a motion for summary judgment, the facts are to be construed in a light most favorable to the non-moving party, and, if there is a genuine issue of material fact, the movant is not entitled to judgment. Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is improper where the court merely believes it unlikely the non-moving party will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962). The Defendant's Motion for Summary Judgment falls short of meeting those standards.

The Employee Suggestion Program created an implied in fact contract between the Defendant and Ms. Anderson. An implied-in- fact contract requires: "1) mutuality of intent to contract; 2) consideration; and, 3) lack of ambiguity in offer and acceptance." City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990); H.F. Allen Orchards v. United States, 749 F.2d 1571, 1575 (Fed. Cir. 1984); Russell Corp. v. United States, 537 F.2d 474, 482 (Ct. Cl. 1976). If the United States is a party, then additional requirement is added that the government representative whose conduct is relied upon must have actual authority to bind the government in contract. City of El Centro, 922 F.2d at 820. In sum, when the parties' conduct indicates mutual assent however an express offer and acceptance are missing, there is an implied in fact contract. See Chavez v. United States, 18 Cl. Ct. 540, 544 (1989).

The relationship here did result in an implied-in-fact contract. Ms. Anderson's claim was accepted and implemented by the DLA. An implied in fact contract is "founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct

of the parties showing, in light of the parties showing, in light of the surrounding circumstances, their tacit understanding." Baltimore & Ohio R.. Co. v. United States, 261 U.S. 592, 597 (1923). The requirements for an implied in fact contract are the same as for an express contract; only the nature of the evidence differs. Employee suggestion programs can form the basis for an implied-in-fact contract.

In Ridenour v. United States, 44 Fed. Cl. 202 (1999), the Court of Federal Claims held that an agency suggestion program

> is an invitation to submit offers which, if accepted by the agency, entitle the offeror to recognition that may include a cash award determined in accordance with published guidelines. An exchange of this character, occurring under the sponsorship of a formal program that holds out a commitment to award, gives rise to enforceable expectations correctly described as an implied-in-fact contract.
> Id. at 207.

Ms. Anderson's suggestion was accepted and implemented. On November 19, 1997, Ms. Anderson's formal written suggestion was received. Ms. Anderson suggested "that when a line is paid in SAMMS, it kick out an automatic flag to the MOCAS system, whether it is based on the FIC or another code. If the FIC is "Q", this is the point when the flags should go out. There should definitely be a key to notify MOCAS personnel which ODO's are already paid." Ms. Anderson described the benefits to this suggestion as the elimination of delinquency reports since SAMMS would do an automatic flag, the reduction in the amount of manual research and work for DCMC employees, as well as savings for all DCMCs. As a result, Ms. Anderson's suggestion was approved

by Gerald Waddington. Mr. Waddington rated the value of the benefit of the suggestion as high and the extent of the application as broad.

As a result of Ms. Anderson's suggestion, Mr. Hogan was directed to submit an AWR embodying Ms. Anderson's suggestion which was ultimately implemented. The deposition testimony of Lillian Leone, Donald Andrews, Vivian Hill and Simone Anderson all indicate that Ms. Anderson's suggestion was implemented, that being a key to notify MOCAS personnel which ODO's are already paid. Specifically, this was accomplished by creating logic that whenever MOCAS sees a value of "70" in field R9, the contract will automatically move from one section of MOCAS to a separate section of MOCAS that will trigger an automatic closeout, thus resulting in the benefits Ms. Anderson described initially in her suggestion.

As further evidence that the defendant implemented Ms. Anderson's suggestion is Dave Schimmel's e-mail to Diana Maykowskyj on January 21, 1999 wherein he states that DSDC completed the necessary work concerning the suggestion and that the program was operational at DISC within the government. The program was also released to another governmental department for imminent installation.

Simply stated, Ms. Anderson's suggestion and the AWR Mr. Hogan submitted are one in the same and the defendant implemented them to its benefit. On March 10, 1999, when Thomas Schulkers, DSCC-BPS disapproved Ms. Anderson's suggestion, he noted that completion of Mr. Hogan's AWR will accomplish the idea of the suggestion. Ms. Anderson's suggestion had an associated cost savings of $7 million to $1.5 billion annually which correlates into an award of at least $25,000 and the potential for an additional Presidential award of $10,000. Plaintiff has

therefore established that the DLA entered into a contract in fact with her, realized a substantial economic savings and must remit the appropriate monetary award to Ms. Anderson.

**CONCLUSION**

The dispositive issue in the instant matter is whether the defendant officially adopted and implemented Ms. Anderson's suggestion. The evidence in this case gathered through the discovery process must lead the court to conclude that the defendant officially adopted and implemented the suggestion. As such, a contract implied-in-fact arose between Ms. Anderson and the defendant. The existence of such a contract, through the Tucker Act, effectively waives the sovereign immunity of the United States and permits the plaintiff to proceed with her cause of action against the defendant.

The record is clear in need instant matter that the defendant adopted and implemented Ms. Anderson's suggestion concerning contract closeout issues between the MOCAS and SAMMS systems. At the very least, a genuine question of material fact exists surrounding this issue. The defendant greatly benefitted from Ms. Anderson's suggestion and it is therefore responsible to compensate her. Based upon the foregoing, it is respectfully submitted that the United States' motion for dismissal or in the alternative for summary judgment must be denied.

Respectfully submitted,

/s/ Matthew V. Portella, Esquire

Matthew V. Portella, Esquire
PORTELLA & BJORKLUND, LLC
126 White Horse Pike
Haddon Heights, New Jersey 08035
856-310-9800
(Fax): 856-546-4711
mvpmusic@comcast.net

Attorneys for Plaintiff

**CERTIFICATE OF FILING**

I hereby certify that on the 3rd day of October 2005, a copy of the foregoing "Plaintiff's Responsive Brief to Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, with Attached Appendix" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Matthew V. Portella, Esquire

Matthew V. Portella, Esquire
PORTELLA & BJORKLUND, LLC
126 White Horse Pike
Haddon Heights, New Jersey 08035
856-310-9800
(Fax): 856-546-4711
mvpmusic@comcast.net

Attorneys for Plaintiff