COPY





IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

SIMONE ANDERSON, : NO. 03-2671C
Plaintiff :
:
vs. :
:
THE UNITED STATES, et al, :
Defendants :

---

Oral deposition of RAYMOND BREUNINGER, taken pursuant to notice, held at the offices of PORTELLA & BJORKLUND, LLC, 126 White Horse Pike, Haddon Heights, New Jersey, on Tuesday, April 26, 2005, beginning at 1:41 p.m., before Kelly A. Draham, Shorthand Reporter-Notary Public, there being present.

---

ZANARAS REPORTING AND VIDEO
REGISTERED PROFESSIONAL REPORTERS
1616 Walnut Street, Suite 300
Philadelphia, Pennsylvania 19103
2112 Bay Avenue
Ocean City, New Jersey 08226
(215) 790-7857 1-877-GO-DEPOS



APPEARANCES:
PORTELLA & BJORKLUND, LLC
BY: MATTHEW V. PORTELLA, ESQUIRE
126 White Horse Pike
Haddon Heights, New Jersey 08035
Phone: (856) 310-9800
Representing the Plaintiff

UNITED STATES DEPARTMENT OF JUSTICE
BY: STEVEN M. MAGER, ESQUIRE
1100 L Street, N.W.
Washington, D.C. 20530
Phone: (202) 616-2377
Representing the Defendants

DEFENSE SUPPLY CENTER PHILADELPHIA
BY: SANDRA L. GUYDON, ESQUIRE
Office of Counsel Suite 3400
700 Robbins Avenue
Philadelphia, Pennsylvania 19111
Phone: (215) 737-8069
Representing the Defendants

ALSO PRESENT: SIMONE ANDERSON



---

INDEX


WITNESS
RAYMOND BREUNINGER

| EXAMINATION BY | PAGE |
|---|---|
| MR. PORTELLA | 5 |


---

EXHIBITS


| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| D-22 | 3/19/99 E-mail.............. | 12 |
| D-23 | 3/19/99 E-mail.............. | 12 |
| D-24 | Name List................... | 25 |
| D-25 | E-mails..................... | 25 |




LITIGATION SUPPORT INDEX


Direction To Witness Not To Answer
Page Line Page Line
None

Request for Production of Documents
Page Line Page Line
None

Stipulations
Page Line Page Line
None

Questions Marked
Page Line Page Line
None






e098d66a-2da4-4645-b217-18716348ffe7

A. As a DCMA customer liaison representative.
Q. Customer liaison representative?
A. Uh-huh. Yes.
Q. What does that mean? What do you do?
A. I'm the focal point between any activities between the buying command that I represent, which is NAVICP(ph), and all of their DCMA offices worldwide.
Q. And how long have you held that position?
A. The current location I'm at I've held for five years.
Q. Before that?
A. For five more years before that at DPSC.
Q. Back to 1995; does that sound right?
A. Yes.
Q. And DPSC, is that in Philadelphia?
A. Yes.
Q. Could you just say for the record what that acronym DPSC stands for?
A. Defense Personnel Support Center. And the names have changed. DPSC became DSCP, which



is Defense Supply Center of Philadelphia, but it's essentially the same organization.
Q. So being the customer liaison representative, that's what you've been doing for at least the past ten years?
A. Yes.
Q. In that role or position in your employment do you deal in any way with employee suggestions?
A. No, I don't.
Q. Are you familiar with an incentive program that the government runs for employee suggestions?
A. Yes.
Q. How do you know? How are you familiar with that?
A. To the extent that I know that people can submit suggestions for awards.
Q. Okay. Have you ever seen the award sheet, how to calculate the awards?
A. No, I haven't.
Q. I'll show you what's marked as D-1. Tell me if you've ever seen that document before?
A. No, I haven't.



Q. Okay. Do you know Simone Anderson?
A. Yes, I do.
Q. How so?
A. She and I worked together when I was the DCMA customer liaison at DSCP.
Q. When you say you worked together, were you a supervisor over her or did you have any authority over her?
A. No. I was the customer liaison. I deal with many different people at the buying activity but not as a supervisor, as an employee of DCMA. If there's any problems with any DCMA contracts I get involved in it or with any DCMA policy.
Q. Are you familiar with any employee suggestion that Ms. Anderson submitted regarding contract closeouts?
A. Yes.
Q. Are you familiar with MOCAS?
A. Yes.
Q. Do you have the opportunity during your job duties in the past ten years to work with MOCAS?
A. I'm not exactly sure what you mean by



work with. Can you clarify that?
Q. Do you input any information into the MOCAS system for the contracts?
A. No.
Q. Are you familiar with SAMMS?
A. Yes.
Q. Same question with SAMMS. Do you utilize SAMMS in your employment inputting information into the program?
A. No, I don't input information.
Q. Let me show you what's marked as D-3. Why don't you look that over. It's a three-page document. Tell me if you've ever seen that document before or any part thereof?
A. I've never seen this document. On the e-mails I did see the proposed procedure and the benefits advantages, but I've never seen this as a package.
Q. Is there any reason that you would be e-mailed information about the procedures contained in this suggestion?
A. I was e-mailed to question as to whether or not I had any information pertaining to the – pertaining to data that I might have in





e098d66a-2da4-4645-b217-18716348ffe7

COPY

Page 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

SIMONE ANDERSON, : NO. 03-2671C
Plaintiff :
:
vs. :
:
THE UNITED STATES, et al, :
Defendants :

---

Oral deposition of DONALD ANDREWS, taken pursuant to notice, held at the offices of PORTELLA & BJORKLUND, LLC, 126 White Horse Pike, Haddon Heights, New Jersey, on Tuesday, April 26, 2005, beginning at 9:38 a.m., before Kelly A. Draham, Shorthand Reporter-Notary Public, there being present.

---

ZANARAS REPORTING AND VIDEO
REGISTERED PROFESSIONAL REPORTERS
1616 Walnut Street, Suite 300
Philadelphia, Pennsylvania 19103
2112 Bay Avenue
Ocean City, New Jersey 08226
(215) 790-7857 1-877-GO-DEPOS

Page 2

APPEARANCES:
PORTELLA & BJORKLUND, LLC
BY: MATTHEW V. PORTELLA, ESQUIRE
126 White Horse Pike
Haddon Heights, New Jersey 08035
Phone: (856) 310-9800
Representing the Plaintiff

UNITED STATES DEPARTMENT OF JUSTICE
BY: STEVEN M. MAGER, ESQUIRE
1100 L Street, N.W.
Washington, D.C. 20530
Phone: (202) 616-2377
Representing the Defendants

DEFENSE SUPPLY CENTER PHILADELPHIA
BY: SANDRA L. GUYDON, ESQUIRE
Office of Counsel Suite 3400
700 Robbins Avenue
Philadelphia, Pennsylvania 19111
Phone: (215) 737-8069
Representing the Defendants

ALSO PRESENT: SIMONE ANDERSON

Page 3

---

INDEX

WITNESS
DONALD ANDREWS


| EXAMINATION BY | PAGE |
|---|---|
| MR. PORTELLA | 6,168 |
| MR. MAGER | 161 |


---

EXHIBITS


| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| D-1 | Award Amounts | 37 |
| D-2 | Memorandum | 44 |
| D-3 | Proposal | 57 |
| D-4 | Evaluation | 65 |
| D-5 | Evaluation | 72 |
| D-6 | Evaluation | 77 |
| D-7 | Evaluation | 77 |
| D-8 | Evaluation | 77 |
| D-9 | Evaluation | 77 |
| D-10 | Acceptance Test Plan | 96 |
| D-11 | 8/3/00 Letter | 100 |


Page 4


| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| D-12 | Memorandum | 105 |
| D-13 | AWR | 105 |
| D-14 | Memorandum | 116 |
| D-15 | 6/3/99 E-mail | 124 |
| D-16 | 2/18/99 E-mails | 124 |
| D-17 | E-mails | 136 |
| D-18 | Packet of Documents | 141 |
| D-19 | Fax and Attachment | 147 |
| D-20 | 5/19/99 E-mail | 153 |
| D-21 | 6/16/99 E-mail | 153 |






c39a729b-2d6b-46f1-a5f3-7bdbb1205883

quickly, DLA was saying it was the AWR that was implemented; correct?

A. They said that it was the AWR that was implemented and that that was implemented prior to the suggestion.

Q. They said it was implemented prior to the suggestion?

A. Well, that it was -- well, that requirement through the AWR was developed and the work in place, the work was being done before they received a suggestion.

Q. But no documents were shown to that effect?

A. I never saw anything.

Q. Did you request them?

A. I did not.

Q. Were you content --

A. I don't believe I did.

Q. Were you content to rely upon their representations that it was in place or it was in the works prior to the suggestion?

A. No, I was not.

Q. If you weren't content why not?

A. Because I believe in looking at the



dates of the AWR and looking at the dates of the suggestion and the SCR that was written by DSCP that both of those documents were written prior to the AWR being written.

Q. Okay. And the SCR was based on Ms. Anderson's suggestion?

A. That's correct.

Q. Is that SCR SUPH98-006 as referenced in your e-mail?

A. I believe it would have been. I'm not sure of the exact number. But I'm referring that that SCR was written to suggest -- to resolve that suggestion. So it would have been one in the same, but the number doesn't look familiar to me.

Q. Do you know who put their handwriting on this document marked D-15? Do you recognize it?

A. I don't. It's not mine.

Q. Okay. Let me show you what was marked as D-16.

MR. PORTELLA: Steve, it's 137.

MR. MAGER: All right. I have it, thank you.



BY MR. PORTELLA:

Q. I'll refer you to the top half.

A. Oh, okay.

Q. What is this?

A. This is an e-mail.

Q. From who to who?

A. That was sent from Pat Clark to myself.

Q. Let me stop you right there. Who's Pat Clark?

A. Pat Clark was the suggestion person within the clothing and textiles directory.

Q. She worked in the employee suggestion office?

A. No. She worked -- you had an employee suggestion office for the whole center and then you had a person in each directorate that was responsible for that directorate's suggestions. She was the person within clothing and textiles.

Q. And what was the purpose of her e-mailing you on the date of February 18, 1999 as contained on the sent line of this e-mail?

A. Can you repeat the question? I'm sorry, I was reading the document.

Q. That's fine. This e-mail was sent to



you on what date?

A. It was on February 18, 1999.

Q. And do you know why Ms. Clark e-mailed you that day?

A. It looks like it was in response to a message that I had written to her. I wrote an e-mail message to Theresa Venti saying that I had heard from headquarters that this program has been implemented. And then I'm saying since -- can you give me the status as to the award process of it.

Q. Is that contained in this Document D-16, that first e-mail to Theresa Venti?

A. Yes. It's the very bottom piece.

Q. And that starts out at the bottom, hi, Theresa?

A. That's correct.

Q. You wrote this?

A. I did.

Q. And your second sentence says per headquarters the program has been implemented?

A. Correct.

Q. I'm assuming that at this time you had already talked to headquarters about this; yes?

A. Yes.







c39a729b-2d6b-46f1-a5f3-7bdbb1205883