**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SIMONE ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03-2671C |
| v. | ) | (Judge Allegra) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SUPPLEMENTAL BRIEF**
**IN RESPONSE TO THE COURT'S FEBRUARY 13, 2006 ORDER**

Pursuant to this Court's February 13, 2006 Order, defendant, the United States, respectfully submits its supplemental brief to address the authority issue raised at oral argument on February 13, 2006.

Plaintiff cannot demonstrate that a Government agent with the authority to approve, adopt, or authorize payment for her suggestion did so. For these reasons and the reasons set forth in our underlying motion, we respectfully request that the Court grant summary judgment for defendant, and dismiss the complaint.

**ARGUMENT**

**I. Plaintiffs Must Demonstrate That They Entered Into A Contract With A Government Agent With Authority**

To establish a valid contract with the United States, a plaintiffs must demonstrate: (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) "the Government representative 'whose conduct is relied upon [had] actual authority to bind the [G]overnment in contract.'" City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990) (quoting Juda v. United States, 6 Cl. Ct. 441, 452 (1984)), cert. denied, 501 U.S. 1230

(1991). It is well settled that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947). Plaintiffs bear the burden of demonstrating that a Government employee has the authority to bind the United States. Kania v. United States, 650 F.2d 264, 268 (Ct. Cl. 1981).

## II. Ms. Anderson Cannot Identify A Government Agent With The Authority To Approve Of Her Suggestion

Ms. Anderson's suggestion was one whose application and implementation went beyond DSCP, the DLA component for which she worked. Ms. Anderson described her suggestion as one which would benefit "every person who works at DCMC."[1] Def. App. 36. Her suggestion was that SAMMS send a flag to MOCAS, a computer system located outside of DSCP. Accordingly, evaluators at DSCP[2] identified Ms. Anderson's suggestion as one whose application and implementation require the approval of other DLA components. Two of three DSCP evaluators checked "DLA," not "DPSC," in section 7 ("Application") on their proposal evaluation forms. Def. App. 39, 41. One of the evaluators, Gerald Waddington, commented that "[a]ll the DLA Supply Centers using SAMMS/DPACS need a MOCAS link to signify when a contract is closed."[3] Def. App. 41. The second DSCP evaluator noted that "because SAMMS is

---

[1] As noted in our initial brief, at the time of the events of this lawsuit, DCMA was part of the DLA, and was known as the Defense Contract Management Command or "DCMC." In our motions, however, we have used DCMA to refer this DOD component in either incarnation.

[2] As noted in our initial brief, DSCP was known as the Defense Personnel Support Center prior to January 13, 1998. See http://www.dscp.dla.mil/history.htm. In our motions, however, we have used DSCP to refer this DOD component in either incarnation.

[3] In her brief, Ms. Anderson identified Mr. Waddington as the individual that purportedly approved her suggestion.

a standardized system used throughout DLA . . . other DLA buying centers should evaluate proposed SAMMS system changes, especially if they may have application DLA wide." Def. App. 40. A third DSCP evaluator failed to check any box in section 7, but provided elsewhere on the form that "further evaluation required by DLA-FOX." Def. App. 38. See also Clark Decl. ¶ 8 ("When we evaluated the suggestion, we recommended that it be sent to our headquarters for further evaluation because it had DLA-wide implications. DSCP could not independently approve a suggestion that had DLA-wide implications.")

The requirement that DSCP forward a suggestion such as Ms. Anderson's for wider review where the potential benefits of the suggestion would accrue across DLA components, and where the suggestion would require changes outside of DSCP is both a matter of law and logic. Indeed, the manual implementing DLA's suggestion program, DLAM 1432.1 (October 19, 2001), § 2-4(e) ("Evaluation of Suggestions") provides that "[w]hen a suggestion is considered desirable and practical, but cannot be adopted locally, the OPI [("office of primary interest")] will forward it together with a complete evaluation to the next higher OPI." Def. App. 15. Because Ms. Anderson's suggestion involved two different computer systems, could not be implemented locally, and had DLA-wide implications, no one at DSCP had the authority to approve her suggestion without the approval of the other affected DLA components.

While the authority to approve in such instances was limited by DLAM 1432.1, the authority to disapprove is more broadly available. DLAM 1432.1 § 2-4(f) provides that "[s]uggestions that are impractical may be disapproved at any level. Evaluators should not forward suggestions to higher echelons unless they are considered desirable and practicable." Def. App. 16 (emphasis added). Several DLA evaluators disapproved of Ms. Anderson's

suggestion and, in an April 15, 1999 memorandum, Thomas D. Ray, Assistant Executive Director of DLA's Procurement Management Directorate states that Ms. Anderson's "suggestion was disapproved due to the fact that the problem is already in the process of being resolved within the MOCAS system." See Def. App. 37. Because Ms. Anderson's suggestion was disapproved by DLA, there can be no award for such suggestion.

### B. Ms. Anderson Cannot Identify A Government Agent With The Authority To Issue An Award For Her Suggestion

Even assuming that award may be granted without the approval of the underlying suggestion, Ms. Anderson cannot demonstrate that anyone with authority approved such award.

DLAM 1432.1, § 1-7 ("Criteria for Award") notes that a written suggestion must be approved "by the benefitting organization at, as a minimum, a management level higher than the individual who recommended the award or use of the suggestion or invention" in order to be eligible for award. Def. App. 6. Accordingly, as an evaluator recommending the use of Ms. Anderson's suggestion, Gerald Waddington[4] could not also approve any award to Ms. Anderson. Nor could Patricia Clark approve award, as she was not at a management level higher than Mr. Waddington. See Clark Decl. ¶ 3. The DSCP evaluation form does have a section for an official to "approve" or "disapprove" of the suggestion; this section is to be completed by the "Commander." See Def. App. 41 (section 15). This would imply that only the Commander of DSCP could approve a suggestion (or award on a suggestion). The Commander

[4] At oral argument, the Government erroneously asserted that Gerald Waddington might have possessed some limited authority with regard to the suggestion, based upon a misunderstanding of his position in DSCP. Mr. Waddington, however, along with Patricia Clark, never possessed the authority to approve a suggestion or an award. See Clark Decl. ¶¶ 3, 7.

of DSCP, however, never signed this portion of the form, and there is no approval by the Commander of DSCP anywhere in the record.

The conclusion that the Commander of DSCP was the only individual at DSCP with the authority to approve award upon a suggestion is further supported by DLAM 1432.1. DLAM 1432,1 § 1-13 ("Delegation of Authority to Approve Cash Awards") provides that the "[h]eads of DLA PLFAs" (primary level field activities) have the authority to award up to $5,000. Def. App. 11. The Commander is the head of DSCP. DSCP's suggestion evaluation form had a section for the Commander's approval. As noted above, this section of the form was never completed.

The Director of DLA possessed the sole authority to approve any award in excess of $5,000, up to $10,000. Def. App. 15. Ms. Anderson does not allege that the Director of DLA approved any award. Pursuant to 5 U.S.C. § 4502(b) and 5 C.F.R. § 451.106, the Office of Personnel Management ("OPM") has the sole authority to issue an award "in excess of $10,000 but not over $25,000." 5 C.F.R. § 451.106(b) (1996). <u>See also</u> Def. App. 17. Ms. Anderson does not allege that OPM approved any award. The President of the United States has the sole authority to issue any award in excess of $25,000. 5 C.F.R. § 451.107(b) (1996). Ms. Anderson does not allege that the President approved any award.

Accordingly, because Ms. Anderson cannot demonstrate that the implementation of or award for her suggestion was approved by a Government agent with authority, we respectfully request that our motion for summary judgment be granted.

## CONCLUSION

With regard to the authority question, the Court should grant summary judgment for defendant, and dismiss the complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street, NW
Washington, D.C. 20530
Tele: (202) 616-2377

March 15, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 15th day of March 2006, a copy of the foregoing "DEFENDANT'S SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S FEBRUARY 13, 2006 ORDER" with attached appendix was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager

Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice